**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ABDUL-RAOOF MUSTAFA,**

                              **Plaintiff,**

        **v.**                                        **5:05-CV-813**
                                                      **(FJS/GHL)**

**SYRACUSE CITY SCHOOL DISTRICT;**
**STEPHEN JONES, Superintendent of**
**Syracuse City Schools, in his Official and**
**Individual Capacities; and SHARON**
**BIRNKRANT, in her Official and Individual**
**Capacities,**

                              **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**SYRACUSE UNIVERSITY**                      **MICHAEL A. SCHWARTZ, ESQ.**
**COLLEGE OF LAW, OFFICE OF**
**CLINICAL LEGAL EDUCATION**
306 MacNaughton Hall
P.O. Box 6543
Syracuse, New York 13217-6543
Attorneys for Plaintiff

**CITY OF SYRACUSE**                         **JOSEPH FRANCIS BERGH, ESQ.**
**OFFICE OF CORPORATION COUNSEL**            **JENNIFER E. SAVION, ESQ.**
City Hall, Room 301
233 East Washington Street
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 29, 2004, Plaintiff Abdul-Raoof Mustafa, f/k/a Randolph Thompson, filed this

action asserting a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983; a Title VII

claim for religious discrimination and failure to accommodate religious practices; and a state

constitutional tort claim pursuant to Article I, Section 8 of the New York State Constitution.

Plaintiff asserted his Title VII claims against his employer, Defendant Syracuse City School

District ("SCSD"), and his section 1983 and state constitutional tort claims against Defendants

SCSD, Defendant Stephen Jones, Superintendent of SCSD, in his individual and official

capacities, and Defendant Sharon Birnkrant, Principal of H.W. Smith Elementary School, in her

individual and official capacities.

## II. BACKGROUND

On September 11, 2001, Plaintiff, an African American and practicing Muslim,

interviewed for a position as a teaching assistant with Defendant SCSD.  Shortly thereafter,

Plaintiff was hired and began work at Franklin Magnet School ("Franklin"), working one-on-one

with children with special needs.  While at Franklin, Plaintiff was allowed to attend Jumma

prayers – the traditional Islamic Friday prayers held at a mosque and led by an imam – by using

his lunch time.

Eventually, Plaintiff was transferred to Delaware Elementary School, where he was again

allowed to attend Jumma prayers by either coming in early or working late in order to make up

the time he missed by attending the prayers.  Subsequently, due to budget cuts, Plaintiff was

transferred to H.W. Smith Elementary School (the "School").

Upon arrival at the School, Plaintiff informed Defendant Birnkrant that he was a

practicing Muslim and that his religion required him to attend Friday noon prayers at a mosque.

Initially, Defendant Birnkrant informed Plaintiff that she could not allow him to leave school for

Friday noon prayers; later, however, she relented so long as he used his personal time for that purpose.

During his time at the School, Plaintiff would often greet the Muslim students with the traditional Muslim greeting, "As-Salaam-Alaikum," which means "peace be upon you."  In March 2004, during parent-teacher conferences, Plaintiff was eating his lunch in the back of the classroom, reading a pocket-sized Quran.  During this break, a young Muslim student and her mother, both part of a local refugee program, entered the classroom for a conference with the teacher and the family's sponsor.  Upon seeing the mother, Plaintiff greeted her with the traditional Muslim greeting, "As-Salaam-Alaikum," and the mother likewise responded. Plaintiff then picked up the five-year old girl, gave her a hug, and kissed her on the forehead. The following day, the sponsor, speaking for herself and the mother, informed Defendant Birnkrant that she thought that this interaction was inappropriate.

Following this incident, Defendant Birnkrant met with Plaintiff and provided him with a counseling memorandum indicating that he should not speak Arabic or any language other than English while at the school.  The memorandum also indicated that Plaintiff should keep his copy of the Quran out of the classroom.  Subsequently, the School's building committee, a group of teachers and administrators charged with answering employee concerns on an anonymous basis, disseminated a memorandum to the faculty, which stated that, since the School was an English-as-a-second-language facility, only English should be spoken.

Plaintiff belonged to two internet discussion groups – an inter-religious discussion group called the Interreligious Council ("IRC") and a peace activism discussion group called the People's Roundtable.  In a message to both groups, Plaintiff discussed Defendant Birnkrant's

counseling memorandum and attached a copy of the memorandum to his message.  Thereafter, a teacher at the School saw the posting and reported it to Defendant Birnkrant.

Two weeks after Plaintiff received the counseling memorandum, Defendant Birnkrant conducted Plaintiff's annual evaluation.  As a result of the evaluation, Defendant Birnkrant did not recommend Plaintiff for tenure; Defendant Jones accepted this recommendation and forwarded it to the Board of Education.  Upon Plaintiff's request, Defendant Jones provided him with a letter stating his reasons for his recommendation to the Board.  Defendant Jones stated that Plaintiff demonstrated that he was unreceptive to supervision by posting the counseling memorandum on the internet, rather than following Defendant SCSD's procedure for rebuttal. Defendant Jones also stated that Plaintiff demonstrated that he was unreceptive to supervision by blaming others for his concerns, by being defensive and by not respecting confidentiality by posting the memorandum on the internet.

On May 17, 2004, Plaintiff filed an administrative complaint against Defendant SCSD with the New York State Division of Human Rights ("NYDHR"), alleging racial and religious discrimination in violation of Title VII and the New York Human Rights Law.  On January 13, 2005, the NYDHR dismissed Plaintiff's complaint.  *See* Complaint at ¶ 38.  On March 31, 2005, the Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue letter; and Plaintiff filed his complaint within ninety days of that letter.  *See id.* at ¶ 40.

In a Memorandum-Decision and Order dated February 11, 2009, this Court dismissed with prejudice Plaintiff's state constitutional tort claim and Plaintiff's claims against Defendant Jones and Defendant Birnkrant in their official capacities.  Currently pending before the Court are Defendants' motion for summary judgment as to all of the remaining claims and Plaintiff's

-4-

motion for partial summary judgment.

Defendants assert that they are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because Plaintiff was not engaged in protected speech and because they would have terminated Plaintiff even in the absence of this speech. Further, Defendants assert that the Court should dismiss Plaintiff's First Amendment retaliation claim against Defendant Jones and Defendant Birnkrant because they are entitled to qualified immunity.

Defendants assert that they are entitled to summary judgment on Plaintiff's claims of religious discrimination and failure to accommodate under Title VII because (1) Defendants offered Plaintiff reasonable accommodations, (2) Plaintiff cannot show that Defendant Birnkrant made discriminatory statements about him, and (3) Defendants had a legitimate, non-discriminatory reason for instituting a policy of only speaking English at the School.

Plaintiff asserts that he is entitled to summary judgment because (1) the facts demonstrate that his speech was constitutionally protected; (2) the protected speech was on a public issue, in a public forum, and resulted in an adverse employment decision; (3) Defendants' decision not to rehire him was related to his protected speech; and (4) Defendants have not proven that his speech caused disruption at the School or that they would not have rehired him even in the absence of his speech.

### III. DISCUSSION

**A.    Summary judgment standard**

A court may grant a motion for summary judgment only if "the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such

issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at 36-37 (quotation and other citation omitted).

Furthermore, in assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party.  *See id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's statement of material facts; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003).

The Second Circuit has cautioned that summary judgment is often inappropriate in cases where the trier of fact will have to delve into an employer's intent because intent is an issue as to which direct evidence is rarely available.  *See Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citations omitted); *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984) (citations omitted).  However, when an employer has explained its conduct and the plaintiff has offered only conclusory assertions in opposition, a court may grant summary judgment.  *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

**B.      Plaintiff's claims pursuant to 42 U.S.C. § 1983**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).  Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)).  As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

*1. First Amendment retaliation claim*

"To survive a motion for summary judgment on a First Amendment retaliation claim, the plaintiff must present evidence which shows '"[(1)] that the speech at issue was protected, [(2)] that he suffered an adverse employment action, and [(3)] that there was a causal connection between the protected speech and the adverse employment action."'" *Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 251 (2d Cir. 2006) (quotation omitted).  "If a plaintiff makes a sufficient showing of each of these elements, summary judgment is not appropriate unless the defendant establishes as a matter of law that he would have taken the same adverse employment action even absent the protected conduct." *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007)

-7-

(citation omitted).  "The legal framework for First Amendment retaliation claims brought under

§ 1983 is virtually identical to the *McDonnell Douglas* burden-shifting analysis used for Title

VII retaliation claims."  *Lore v. City of Syracuse*, 583 F. Supp. 2d 345, 382 (N.D.N.Y. 2008)

(citations omitted).


### a. Was Plaintiff's speech constitutionally protected?

In determining whether Plaintiff's speech was constitutionally protected, the Court must

determine "whether [he] spoke as a citizen on a matter of public concern."  *Garcetti v. Ceballos*,

547 U.S. 410, 418 (2006) (citation omitted).

> It is critical to note that this [determination] contains two separate
> requirements – namely, (1) that the employee speak as a citizen,
> and (2) that the employee speak on a matter of public concern.  If
> either of these requirements is not met, then plaintiff's First
> Amendment retaliation claim must fail as a matter of law.

*Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283, 291 (E.D.N.Y. 2009) (citing

*Sousa*, 578 F.3d at 170).

Defendants assert that they did not retaliate against Plaintiff in violation of his First

Amendment rights because Plaintiff was not engaged in protected speech and because they

would not have given Plaintiff tenure even in the absence of the speech.  Defendants claim that

Plaintiff's posting of the counseling memorandum on the internet was not a matter of public

concern because it was nothing more than an employee grievance and because the policy

discussed in the counseling memorandum did not touch on or affect the public at large.  Plaintiff

argues that, when the posting is looked at in the context of his entire message, it is clear that he

was engaged in speech touching upon matters of public concern because he was explaining his

view that Defendant SCSD might be discriminating against Muslims and the Islamic faith. Further, Plaintiff contends that, even if the Court finds that part of his speech was motivated by his personal situation, motive is only one factor in determining whether the speech was a matter of public concern and that his speech's public importance is not diminished simply because the underlying subject matter was of personal significance to him.

In *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196 (2d Cir. 2010), the Second Circuit recently held that the key question in determining whether a plaintiff spoke as an employee or as a citizen is whether his speech was "'undertaken in the course of performing' . . . his primary employment responsibility" and was aired "in furtherance of the execution of one of [his] core duties" as a teacher's assistant. *Id.* at 203 (quotation omitted). In the present matter, had Plaintiff filed an internal grievance, *Weintraub* would dictate that he was speaking as an employee; however, because he voiced his concerns in a public forum, which is generally available to all citizens, the Court may view Plaintiff as speaking as a citizen and not merely as an employee. *See id.* at 204; *see also Boyce v. Andrew*, 510 F.3d 1333, 1343-44 (11th Cir. 2007) (finding that the "form and context" of the employees' complaints, which were made directly to supervisors and were not "sent to an outside entity," weighed against First Amendment protection).

However, even if Plaintiff had spoken as a citizen and not as an employee, he does not meet the second criterion, *i.e.*, that his speech discussed a matter of public concern. Plaintiff began his internet posting by stating that he was "seeking the forums [sic] advice concerning a situation that [he was] finding very hard to believe." *See* Dkt. No. 45-4. Plaintiff then proceeded to explain the situation that caused Defendant Birnkrant to write a counseling memorandum

reminding him about the school's language policy.  *See id.*  The language of Plaintiff's letter and the attached counseling memorandum made clear that Plaintiff was either seeking the forum's advice on how he should deal with a policy of which he did not approve or on how he should deal with the district reprimanding him for conduct that he did not believe warranted any form of reprimand.  *See Blum v. Schlegel*, 18 F.3d 1005, 1012 (2d Cir. 1994) (noting that "[it] is true that the fact that an employee's speech touches on matters of public concern will not render that speech protected where the employee's motive for the speech is private and personal").

Even more telling of Plaintiff's state of mind is his deposition testimony.  During Plaintiff's deposition, counsel asked Plaintiff whether he was trying to change the school's policy in posting his message on the forum's website.  *See* Dkt. No. 44-13 at 155.  Plaintiff replied as follows:

> A    I was bringing this to the people's attention and in hopes –
>      well, the people on this discussion group, they weren't part
>      of the Syracuse City School District that would be able to
>      change the policy.
>
> Q    Okay.  So you knew that when you were posting it that
>      these weren't people who could change the policy.
>
> A    This is a discussion group.
>
> Q    Just a discussion group.
>
> A    Right.

*See id.*  Plaintiff's response makes clear that he was not posting his comments in order to facilitate change, because he believed – whether correctly or not – that the groups' members did not have the authority to make such changes.

When determining whether the plaintiff's speech addresses a matter of public concern, the

-10-

court should look to "whether the speech 'was calculated to redress personal grievances or whether it had a broader public purpose[.]'" *Hoyt v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006) (quotation omitted). Here, it cannot be said that this speech was meant to do anything more than redress Plaintiff's personal grievance, especially in light of the fact that he believed that the forums' members were unable to affect district policy.

Moreover, even if Plaintiff's explanation of the circumstances surrounding the counseling memorandum could be considered a discussion of a matter of public concern, it is clear that Plaintiff's posting of the counseling memorandum was not. The counseling memorandum discussed Plaintiff's job expectations and the fact that his supervisors had already spoken to him about reading his Quran in the classroom. *See* Dkt. No. 44 at Exhibit "E." Moreover, it provided enough information to allow members of the School's community to identify who it was that complained about Plaintiff's conduct, a subject clearly meant to be confidential as provided in Plaintiff's contract. *See id.* It cannot be said that this memorandum, which discussed a family's concerns about Plaintiff's behavior and a reminder to Plaintiff regarding school district policy, discussed issues of public concern. Significantly, in Defendant Birnkrant's April 8, 2004 evaluation and in Defendant Jones' letter explaining Defendant SCSD's reasons for not renewing Plaintiff's contract, both Defendants only discussed the fact that Plaintiff posted the counseling memorandum on the internet and did not mention the discussion that Plaintiff commenced with the forums' members. In other words, Defendants Birnkrant and Jones focused only on that part of Plaintiff's "speech" that did not discuss a matter of public concern.

Based on the foregoing, the Court finds that Plaintiff's speech was not constitutionally protected because it did not address a matter of public concern.

### b. Would Defendants have taken adverse employment action notwithstanding Plaintiff's speech?[1]

Defendants assert that, even if Plaintiff's speech were protected, they had legitimate reasons to deny Plaintiff tenure.  Defendants contend that, during Plaintiff's employment in the district, he had several conflicts with other staff members and it was often noted on his evaluations that he was not receptive to supervision and did not work well with other staff members.  Moreover, Defendants claim that, during Plaintiff's time at the School, he had two major conflicts with other staff members that necessitated his reassignment twice.  Further, Defendants assert that, pursuant to his contract, Plaintiff was expected to follow district procedure to redress any grievances he may have had.

Plaintiff claims that, contrary to Defendants' assertion, Defendant Birnkrant's evaluation clearly links the recommendation of no tenure with Plaintiff's internet postings and that the evaluation actually gives Plaintiff a "satisfactory" under the category "works well with other staff members."  *See* Dkt. No. 49 at 7.  Plaintiff asserts that Defendant Birnkrant's deposition testimony demonstrates that Plaintiff's speech was a motivating factor in Defendant Birnkrant's decision to recommend that Defendant SCSD not renew his contract and that Defendant Birnkrant testified that Defendant SCSD's personnel office advised her to complete Plaintiff's evaluation and "'give him an unsatisfactory in keeping confidentiality and being receptive to supervision.'"  *See id.*  Further, Plaintiff asserts that Defendants' reliance on the fact that he was

---

[1] Although finding that the speech was not constitutionally protected disposes of Plaintiff's First Amendment retaliation claim, because of the nature of the claim, the Court has also included this discussion as an alternative ground for dismissal.

involved in two disputes while at the School is pretextual because, in fact, he was the one who got the administration involved to resolve those disputes.

The Second Circuit has held that a causal connection between an adverse employment action and protected speech "must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (citation omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 593 (1998) (citation omitted).  "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Morris*, 196 F.3d at 110 (citation omitted).  This requires the plaintiff to establish that, absent his protected speech, the alleged retaliatory actions would not have occurred.  *See id.*

In the present matter, Defendants have provided several legitimate, non-discriminatory reasons for the alleged retaliatory act.  First, on January 4, 2002, Plaintiff met with the principal of Franklin Elementary School, the assistant director of special education, and a labor-relations specialist to discuss concerns brought to the principal's attention regarding Plaintiff's interactions with staff members and his failure to follow the directives of his supervising teacher and administrators.  *See* Declaration of Jennifer E. Savion dated March 12, 2010 ("Savion Decl."), at Exhibit "B."  As a result of this meeting, Plaintiff was reassigned to Delaware Elementary School.  *See id.*  Further, in his evaluation dated December 20, 2001, Plaintiff received low marks in almost all categories.  *See id.* at Exhibit "C."  Specifically, he received "unsatisfactory"

in the categories "[w]orks well with staff members," and "[i]s receptive to supervision."  *See id.*[2]
Further, he received a mark in between "Satisfactory" and "Unsatisfactory" in the categories
entitled "[i]s punctual in performance in job duties," and "[i]s knowledgeable of job
expectations," and received a "Satisfactory" in the categories entitled "[i]s in regular daily
attendance," "[w]orks well with student/(one)," "[p]erforms instructional duties," and
"[p]erforms non-instructional duties."  *See id.*

    In his April 8, 2004 evaluation, it was noted that Plaintiff was unreceptive to supervision,
as demonstrated by posting confidential material on the internet and that he did not respect
confidentiality.  *See id.* at Exhibit "F."  Further, it was noted that he was only satisfactory in
being in regular daily attendance, working well with staff members, and continuing to learn and
improve in service.  *See id.*  Additionally, it was noted that there had been issues with other staff
members.  *See id.*  As a result of this evaluation, Defendant Birnkrant did not recommend
continued service "in H.W. Smith" or tenure for Plaintiff.  *See id.*  She also made this
recommendation in light of the fact that Defendants were required to place Plaintiff in two
different placements during his time at the School.  *See* Dkt. No. 49 at 8-9 (citations omitted).

    These evaluations are in addition to the events that transpired on March 18, 2004, in
which a family observed Plaintiff reading his Quran in the classroom, something he had been
previously asked not to do.  Thereafter, Plaintiff greeted the family in Arabic and then
"approached the five-year old girl, picked her up, gave her a hug and kissed her on the forehead."
*See* Plaintiff's Statement of Material Facts at ¶ 23.  Thereafter, the family's sponsor contacted the

---

    [2] The evaluation form contains four possible ratings: "unsatisfactory," "satisfactory,"
good," and "excellent."

School and informed it that Plaintiff's conduct made both her and the mother feel uncomfortable. *See id.* at ¶ 24; *see also* Savion Decl. at Exhibit "I," at 19-22.

Finally, in response to Plaintiff's inquiries about why Defendant Jones did not recommend tenure, Defendant Jones wrote to Plaintiff and explained that the following were his reasons:

> Evaluation category #7 – Is receptive to supervision
> Unsatisfactory rating on annual evaluation due to a supervisory
> memo being shared on the internet, rather than following the
> District procedure for rebuttal.
>
> Also, unreceptive to supervision when concerns are addressed,
> becomes defensive and blames others.
>
> Evaluation category #12 – Respects confidentiality
> Unsatisfactory rating on annual evaluation that also applies to the
> above incident in which Mr. Mustafa did not follow the District
> procedure for disagreeing with a supervisory memo.

*See* Savion Decl. at Exhibit "G."  The fact that Defendant Jones focused on the posting of the supervisory memorandum is significant because that memorandum clearly did not address a topic of public concern.  The supervisory memorandum discussed Plaintiff's job expectations and the fact that his supervisors had already spoken to him about reading his Quran in the classroom. *See id.* at Exhibit "E."  Moreover, the supervisory memorandum provided enough information to allow members of the School's community to identify who had complained about Plaintiff's conduct; a subject clearly meant to be confidential as provided in Plaintiff's contract, and which provided Defendants with justification to decline to grant Plaintiff tenure.  *See id.* at Exhibit "A."

Based on the foregoing, the Court holds that Defendants have established, by a preponderance of the evidence, that they would not have renewed Plaintiff's contract notwithstanding his allegedly protected speech.  Moreover, Plaintiff has failed to adduce

evidence that would permit a jury to find that Defendants' legitimate, non-discriminatory reasons were actually a pretext for discrimination. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168-69 (2d Cir. 2001); *see also Pleener v. N.Y. City Bd. of Educ.*, 311 Fed. Appx. 479, 482 (2d Cir. 2009). Accordingly, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's First Amendment retaliation cause of action.


**C.       Plaintiff's Title VII claims**

Plaintiff asserts that Defendants discriminated against him "on the basis of religion and refused to accommodate his religious practices in violation of Title VII of the Civil Rights Act of 1964." *See* Complaint at ¶ 42. Defendants assert that the Court should dismiss Plaintiff's claims for religious discrimination and failure to accommodate because they had legitimate, non-discriminatory reasons for their actions and because they offered Plaintiff reasonable accommodations. Regarding reasonable accommodations, Defendants assert that allowing Plaintiff to use personal time to attend Friday services and to take unpaid leave when his personal time ran out was a reasonable accommodation and that Plaintiff failed to establish disparate treatment by comparing his situation to that of a tenured teacher. Regarding Defendants' legitimate, non-discriminatory reason for instituting a policy of only speaking English at the School, Defendants assert that the School has a large population of students who do not speak English as a first language and a strong English-as-a-Second-Language ("ESL") program. Defendants claim that a focus on English is a major premise of an ESL program and that this policy enforces accountability and deters inappropriate language and misinterpretation and that the focus is on only speaking English, not the exclusion of Arabic.

In Plaintiff's response to Defendants' motion for summary judgment, Plaintiff fails to address why the Court should not dismiss this cause of action and, instead, merely discusses his First Amendment claims.  *See generally* Dkt. No. 49.  Accordingly, the Court deems Plaintiff's Title VII claim abandoned.  *See Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (holding that federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the non-movant does not address the argument in any way (collecting cases)).  Alternatively, for the reasons discussed below, the Court concludes that Plaintiff's Title VII claims fail on the merits as well.

### 1. Religious discrimination claim

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).

"To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting laid out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)[.]"  *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006).  Under that rubric, the plaintiff must satisfy an initial burden of "proving by the preponderance of the evidence a prima facie case of discrimination."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  To establish a *prima facie* case, an employee must show that he "(1) is a member of a protected class; (2) was qualified for the position at issue; (3) was denied the position; and (4) that the circumstances of the adverse employment

decision give rise to an inference of discrimination." *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (citations omitted).

Once the plaintiff makes out a *prima facie* case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Stratton v. Dep't for Aging for City of N.Y.*, 132 F.3d 869, 879 (2d Cir. 1997). Finally, if the defendant provides a nondiscriminatory rationale for its conduct, the rebuttable presumption drops out of the case. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). The burden then rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual but also that the defendant discriminated against the plaintiff. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 93-94 (2d Cir. 2001) (quotation omitted). In other words, "the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (citations omitted).

In the present matter, Defendants concede that Plaintiff is a member of a protected class, that he was qualified for the position as a teacher's aide, and that he was removed from this position. Therefore, to establish his *prima facie* case, Plaintiff only needs to establish "that the circumstances of the adverse employment decision give rise to an inference of discrimination." *Mandell*, 316 F.3d at 377 (citations omitted). For purposes of this Memorandum-Decision and Order, the Court has assumed that Plaintiff has met this "minimal" burden. *See St. Mary's Honor Ctr.*, 509 U.S. at 506 (describing the plaintiff's *prima facie* burden as "minimal").

Defendants, however, have established that they had non-discriminatory reasons for

denying Plaintiff tenure.[3]  As previously discussed, Plaintiff received several performance

evaluations that were, at best, mediocre.  He had several incidents with other staff members, one

of which required him to be placed in a different building within the district.  Further, his

conduct on March 18, 2004, was unprofessional and led to the family's sponsor calling the

School to express her concerns – concerns that the child's mother shared.  Finally, in posting the

counseling memorandum on the internet, Plaintiff made public not only the communications he

had with the School but also allowed the private concerns of a family to be made public without

its consent.  Such conduct is clearly a violation of the privacy policy set forth in Plaintiff's

contract.[4]

     Plaintiff has failed to establish that these legitimate, non-discriminatory reasons are just a

pretext for discrimination.  *See Roge*, 257 F.3d at 168-69.  Accordingly, the Court grants

---

[3] Defendants focus on several irrelevant issues in their memorandum of law in support of summary judgment regarding this point.  First, they assert that they had a legitimate, non-discriminatory reason for instituting a policy of only speaking English at the School.  *See* Defendants' Memorandum of Law at 6.  This argument, however, ignores the fact that Plaintiff's complaint alleges religious discrimination in violation of Title VII.  Had the complaint been premised on national origin discrimination, such a discussion might have been relevant.

     Next, Defendants assert that a counseling memorandum is not an adverse employment action.  Although this is undoubtedly true, it is irrelevant because Plaintiff's contract was not renewed.  Had Defendants renewed Plaintiff's contract, the analysis would be considerably shorter because a letter reminding Plaintiff about the School's English-only policy is clearly not an adverse employment action.

[4] Plaintiff's contract states that a member may be subject to dismissal if he "deliberately release[s] to unauthorized personal [sic] information which the member has been told, or which through office practice or visible notations, any reasonable person would know is confidential."  *See* Dkt. No. 48-1.  Not only are Defendant SCSD's employees encouraged to keep information in their personnel file confidential, *see* Dkt. No. 48-3 at 59-63, but a reasonable employee would know that communications regarding a sponsor and a student's family should be kept confidential to protect the family's privacy.

Defendants' motion for summary judgment and dismisses Plaintiff's Title VII discrimination claim.[5]

### 2. Defendants offered Plaintiff reasonable accommodations regarding his religious practice

Plaintiff has claimed that Defendants refused to accommodate his religious practices by requiring him to use personal time to attend Friday religious services.  "[W]hen an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."  *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (citation omitted).  Although the parties should remain flexible when formulating such an accommodation, the employer need not offer the employee's preferred accommodation; rather, "when any reasonable accommodation is provided, the statutory inquiry ends."  *Id.* (citing [*Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986) (citing 118 Cong. Rec. 706 (1972))]).

Defendants concede that Plaintiff had a bona fide religious belief that conflicted with an employment requirement (regular attendance) and that they were aware of it; however, they assert that they reasonably accommodated Plaintiff and that he was not disciplined for failing to comply with this conflicting employment requirement.  *See* Defendants' Memorandum of Law at 4.

---

[5] To the extent that the Court could construe Plaintiff's complaint to allege that Defendant SCSD's policy of forbidding Plaintiff to read his Quran in the classroom is discriminatory, Plaintiff has failed to offer any reason why such a policy constitutes religious discrimination.  He does not allege that Defendants permitted people who practiced other religions to read religious texts in the classroom.

Defendant SCSD's policy regarding religious observances is that the district will grant such requests, but that the employee must use personal time must for such observances.  *See* Savion Decl. at Exhibit "K," at 22.  In Plaintiff's first two assignments in the district, the schools' principals were able to accommodate Plaintiff by allowing him to make up the time in other scholastic programs before or after school, so that he would not be required to use his personal time.  H.W. Smith Elementary, however, had no such programming.  *See id.* at Exhibit "I," at 53. Plaintiff was informed at the start of the school year at H.W. Smith that he would be required to take personal time to attend services in accordance with school district policy.  Personnel offered to look into possible transfer options if he was not comfortable with this arrangement, but Plaintiff stated that he did not want to transfer.  *See id.* at Exhibit "K," at 20-21.

Here, Plaintiff was not forced to choose between his religion and his employment; he was permitted to take personal time to attend services, and he took advantage of this arrangement. *See* Complaint at ¶ 19; Savion Decl. at Exhibit "L," at 108.  Further, if he ran out of personal time, he would have been granted unpaid leave for religious observances.  *See* Savion Decl. at Exhibit "K," at 22.  Moreover, on occasions when students were not in the building on a Friday afternoon, Plaintiff was released to attend services.  *See id.* at Exhibit "J," at 76.  Plaintiff has not shown that he was subject to any discipline or unfavorable employment action as a result of his desire to attend religious services on Friday afternoon; nor has he demonstrated that Defendants failed to provide him with a reasonable accomodation.  *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70-71 (1986) (holding that requiring an employee to take unpaid leave for religious observance generally is reasonable because it has "'no direct effect upon either employment opportunities or job status'" (quotation omitted)).

Further, Plaintiff has failed to establish that Defendants treated other employees differently in accommodating their religious practices.  To prove disparate treatment, Plaintiff was required to show that Defendants treated him "'less favorably than a similarly situated employee outside his protected group[.]'"  *Mandell*, 316 F.3d at 379 (quotation omitted).  In his deposition, Plaintiff attempted to establish disparate impact by stating that Defendant SCSD allowed Ms. Francine Berg, a Jewish music teacher, to leave for religious observances without taking personal time.  *See* Savion Decl. at Exhibit "L," at 203-04.  Ms. Berg, however, is a tenured teacher subject to a different union contract, which allows for "planning time," which she is permitted to use at her discretion, and which may be combined with other free time, such as lunch, to allow her occasionally to attend such services without using her personal time.  *See id.* at Exhibit "J," at 14.  Finally, Plaintiff has not alleged that Defendants permitted any district employee of another religion to read religious materials in a classroom.

Given the differences in Plaintiff's contract as a teacher's aide and Ms. Berg's contract as a tenured teacher, it cannot be said that Plaintiff and Ms. Berg were similarly situated.  *See Smith v. Xerox Corp.*, 196 F.3d 358, 370 (2d Cir. 1999), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134 (2d Cir. 2006) (holding that "a disparate treatment claim looks at how an individual was treated compared to her similarly situated coworkers"); *see also Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (holding that, "[t]o be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare [himself] must be similarly situated in all material respects" (citation omitted)); *Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004) (holding that "[i]t is true that, as a probationary [employee], [plaintiff] was not similarly situated to the other [tenured employees] with respect to the conditions under

-22-

which he could be terminated, and thus the mere fact that he was fired for his adjudications, while they were not, would not by itself support an inference of discrimination").

Accordingly, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's failure to accommodate cause of action.


## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment is **DENIED** as **MOOT**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.


**IT IS SO ORDERED.**

Dated: November 1, 2010
      Syracuse, New York

                                     Frederick J. Scullin, Jr.
                                     Senior United States District Court Judge